UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**WILLIAM BENNETT,**

Plaintiff,

v.                                                    **No. 4:24-cv-00604-P**

**FIRST INTERSTATE BANK,**

Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 24, 27. After reviewing the motions, the briefs, and the applicable law, the Court will **DENY** both motions.

## BACKGROUND

Plaintiff William Bennett guaranteed a loan to an entity he controlled called 112 N. Central Novel Coworking LLC (the Borrower), which is not a party to this suit. The loan financed the purchase and renovation of a commercial property in Phoenix, Arizona (the Property) and was secured by a deed of trust. Defendant First Interstate Bank (the Bank) succeeded the original lender and came to hold the promissory note (the Note) and the deed of trust. When the Borrower struggled to pay despite several loan modifications, the Bank sought to exit the loan.

Here the parties' accounts diverge. According to Bennett, the Bank approached him with an offer to sell the Note for $3 million. ECF No. 28 at 1–2. Bennett accepted the offer in a phone call with John Seeberger, the Bank's agent, on June 11, 2024. *Id.* at 2. Seeberger then sent an email to his superior at the Bank explaining that Bennett's "team of investors" was willing to purchase the Note for $3 million. *Id.* Bennett confirmed that agreement in an email the same day. *Id.* at 3. But after reaching a deal with Bennett, the Bank reached out to another potential

note-buyer, SMS Financial, LLC (SMS). SMS offered $10,000 more, and the Bank backed out of the deal with Bennett. *Id.* at 4.

The Bank tells a different story. According to the Bank, its agents discussed two pathways to exit the loan: allowing the Borrower to pay off the Loan at a discount or, alternatively, selling the Note to a third-party buyer. ECF No. 25 at 12. It was Bennett who first proposed buying the Note from the Bank. *Id.* at 14–15. When SMS came into the picture ready to buy the Note, the Bank contacted Bennett to give the Borrower—not Bennett personally—one last chance to pay off the Note at a discount. *Id.* at 15–16. When Seeberger called Bennett, he was negotiating with Bennett in his capacity as an agent of the Borrower. The Borrower did not accept the offer to let it pay off the loan at a discount, so the Bank sold the Note to SMS. *Id.* at 18.

Bennett sued the Bank in state court for breach of contract and promissory estoppel. ECF No. 1. The Bank removed to this Court. *Id.* After the Court denied the Bank's motion to dismiss, the parties conducted discovery, and both moved for summary judgment. Their competing motions are ripe.

## ANALYSIS

### A. Factual Dispute

This pair of motions forms a classic case of "he said, she said." While both parties present documentary and testimonial evidence supporting their respective versions of events, a key fact—the nature and content of the phone call between Bennett and Seeberger on June 11—requires a credibility determination that is inappropriate for the Court to make at summary judgment. *Gilbert v. Big Brothers Big Sisters of Am., Inc.*, 262 F. Supp. 3d. 402, 412 (N.D. Tex. 2017). The record reveals both accounts of the phone call to be plausible. For example, the Bank's communications leading up to the June 11 call suggest it only contemplated granting the Borrower a discounted payoff. ECF No. 26 at App. 0207–08. On the other hand, Seeberger's internal email to his superior, Pete Jardine, stated that Seeberger discussed a purchase of the Note by Bennett's team of investors. ECF No. 29 at App. 042.

But neither side's evidence conclusively proves its case. To highlight the two examples used above, the Bank's evidence shows that it contemplated a discounted payoff, but it does not prove that a Note purchase by Bennett was not also under consideration. And while Seeberger's email to Jardine shows that Bank negotiators referred, on June 11, to a potential Note purchase by Bennett's team, it leaves ambiguity as to whether a deal was reached over the phone. Simply put, the question of whether a contract was formed is for a jury, not the Court, to decide. Neither party, therefore, is entitled to summary judgment.

### B. Statute of Frauds

In addition to attacking the evidentiary support of Bennett's claims, the Bank also argues that the statute of frauds bars those claims as a matter of law. ECF No. 25 at 27–29. The statute of frauds provides that, to be enforceable, a contract for the sale of "real estate" must be in writing and signed by the party to be charged. TEX. BUS. & COM. CODE ANN. § 26.01.[1] The Bank argues that because the Note is secured by a deed of trust, which gives legal title to the subject property under Arizona law, an agreement to sell the Note is subject to the statute of frauds. ECF No. 25 at 27–28.

The statute of frauds does not necessarily bar Bennett's claims as a matter of law for two reasons.

*First*, the statute of frauds does not apply in transactions that merely incidentally affect real estate. *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied). Examples of transactions only incidentally involving real estate include an agreement to settle a claim to title of real estate, *id.* at 225, and an oral contract for a real estate buyer to pay off his purchase-money note in exchange for a promise not to foreclose. *Bridewell v. Prichett*, 562 S.W.2d 956, 958 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.). The facts alleged by Bennett resemble those in *Bridewell*. There, the statute of frauds was "without application

---

[1]The Bank does not specify whether Texas or Arizona law should apply to the issue of contract formation, but it asserts that the result under both states' statutes of frauds would be the same. ECF No. 25 at 28–29.

because the main purpose of Bridewell was to effect a new contract for his own benefit," rather than to answer for another's debt or to acquire another's interest in real estate. *Bridewell*, 562 S.W.2d at 958. Likewise, although acquiring the deed of trust was a necessary aspect of the alleged contract to buy the Note, the primary object of the transaction was to get the Bank and the Borrower out of the repeatedly defaulting loan on mutually satisfactory terms.

*Second*, even if the statute of frauds applies, a jury may find that the writings between the parties and among Bank representatives form a valid contract. If so, those writings would satisfy the statute. The writing memorializing a contract "need not be contained in one document." *Preston Exploration Co., LP v. GSF, LLC*, 669 F.3d 518, 522 (5th Cir. 2012). And the memorandum of the agreement may even consist of writings directed to third parties. *Adams v. Abbott*, 254 S.W.2d 78, 80 (Tex. 1952). The statute of frauds, therefore, does not bar Bennett's claims as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** both parties' motions for summary judgment. ECF Nos. 24, 27.

**SO ORDERED** on this **27th day of June 2025.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE